,

Natalie Camacho Mendoza ( ISB 4127)
CAMACHO MENDOZA LAW
P.O. Box 190438
Boise, ID 83719
natalie@camachomendozalaw.com

Mario Martinez (*pro hac vice*, CA SBN 200721)
Edgar Iván Aguilasocho (*pro hac vice*, CA SBN 285567)
MARTINEZ AGUILASOCHO & LYNCH, APLC
P.O. Box 11208
Bakersfield, CA 93309
info@farmworkerlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| Cesar Martinez-Rodriguez, et al., | ) Case No.  1:17-cv-0001-BLW |
| Plaintiffs, | ) |
| v. | ) **PLAINTIFFS' RESPONSE IN** |
| | ) **OPPOSITION TO LEGAL** |
| | ) **FACILITATOR DEFENDANTS'** |
| Curtis Giles, et al., | ) **MOTION TO DISMISS PURSUANT TO** |
| Defendants. | ) **FRCP 12(b)(6)** |
| | ) |
| | ) Complaint Filed: January 3, 2017 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR
DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 1**

,

Plaintiffs file this response to Defendants Jeremy L. Pittard and Jeremy L. Pittard, Attorney at Law, PLLC's ("Legal Facilitator Defendants") February 28, 2017 Motion to Dismiss Pursuant to FRCP 12(b)(6) ("Dkt. No. 13-1"). Legal Facilitator Defendants misapprehend and misconstrue the legal and factual basis for Plaintiffs' claims. Legal Facilitator Defendants' arguments that Plaintiffs have failed to state a claim under the TVPRA and Civil RICO statutes are therefore unfounded. Plaintiffs have sufficiently alleged that Legal Facilitator Defendants aided and abetted Employer Defendants in fraudulently recruiting Plaintiffs, thereby forming a central part of the criminal enterprise's scheme to acquire labor in violation of the labor and trafficking provisions of the TVPRA and Civil RICO. Moreover, dismissal of the claims against Legal Facilitator Defendants in not appropriate until Plaintiffs have been permitted discovery on the extent of their involvement in hatching the scheme to fraudulently recruit Mexican veterinarians by way of the relatively-unknown NAFTA TN Visa framework.

## I.     Legal Standard

In *Iqbal* and *Twombly*, the U.S. Supreme Court held that in order to survive a motion to dismiss, a plaintiff's claim must be "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint requires nothing more than a "short and plain" statement, FED. R. CIV. P. 8(a)(2), that "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted); *accord Philips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). A complaint meets this test if it tells a coherent story and "suggest[s]" the required elements of the plaintiff's claim − which is all that it takes legally for a complaint to be, as stated in *Twombly*, "plausible." *Twombly*, 550 U.S. at 556; *Phillips*, 515 F.3d at 234. If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible,

,

plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*. *Id.* The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. *Id.* The factual allegations of the complaint need only "plausibly suggest an entitlement to relief." *Id*. As the Court wrote in *Twombly*, Rule 8(a) "*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Id.* (citing *Twombly*, 550 U.S. at 556) (emphasis added).

In ruling on a motion to dismiss, the Court must accept "allegations in the complaint, together with reasonable inferences therefrom," as true for purposes of the motion. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007); *Associated Gen. Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). A dismissal for failure to state a claim pursuant to 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.; *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (internal quotation marks omitted).

## II.     Statement of Relevant Facts

Accepting the facts alleged as true and viewing those facts in the light most favorable to Plaintiffs, Plaintiffs allege the following in their Complaint. Plaintiffs are Mexican veterinarians who Defendants recruited through various Mexican universities with false promises of work as animal scientists. Dkt. No. 1, at ¶ 1. Once they arrived in the United States, Defendants engaged in unlawful forced labor practices by subjecting Plaintiffs to long working hours under arduous conditions as general-labor dairy workers under threat of deportation. *Id.*

,

Legal Facilitator Defendants served an essential role in this bait-and-switch criminal conspiracy. Once Employer Defendants had finished interviewing Plaintiffs and selecting them for work at Funk Dairy, Defendant Pittard guided Plaintiffs through the NAFTA TN Visa application process. *Id.*, at ¶¶ 37, 40. Defendant Pittard prepared materials sent to Plaintiffs that included false promises as to the working conditions they could expect when they arrived in the U.S. *Id.* Shortly before their interviews with United States Embassy officials, Defendant Pittard spoke with Plaintiffs individually to coach them as to the responses they would need to give in their TN Visa interviews. *Id.* During those conversations, Defendant Pittard explicitly coached Plaintiffs on denying that they would be performing general labor at the dairy and thereby reinforced Plaintiffs' understanding that they would be working at the dairy as animal scientists. *Id.*[1] In doing so, Legal Facilitator Defendants materially assisted Employer Defendants in abusing the legal process through obtaining fraudulent NAFTA professional visas with no intention of providing professional work to Plaintiffs. *Id.*, at ¶ 67.

### III.  Argument

#### A.  TVPRA Claims

As to Plaintiffs' First and Second Claims for Relief, Legal Facilitator Defendants cite *Shuvalova v. Cunningham*, No. C 10-02159 RS, 2010 U.S. Dist. LEXIS 135502, at *2 (N.D. Cal. Dec. 22, 2010) for the proposition that merely aiding a defendant, "without more, is insufficient to sustain" claims under 18 U.S.C. §§ 1589 and 1590 ("TVPRA claims"). Dkt. No. 13-1, at 7. Legal Facilitator Defendants' argument rests on the incorrect assumption that reviewing

---

[1] Of note: At this early stage of the proceedings, Plaintiffs have not yet initiated discovery tailored towards the productions of documents that would shed light on the origins of this criminal conspiracy. As outlined in the Plaintiffs' Complaint, the fraudulent recruitment of Plaintiffs via NAFTA TN Visas was a sophisticated scheme that likely involved their legal counsel's input at the earliest stages. Plaintiffs expect that discovery will provide further evidence as to Legal Facilitator Defendants' involvement in the criminal conspiracy, which would then be pled in an amended complaint.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 4**

,

immigration documents filled out by Plaintiffs and speaking with Plaintiffs about their U.S. Embassy interviews were innocuous acts. Dkt. No. 13-1, at 6; Dkt No. 13-1, at 9. In effect, Legal Facilitator Defendants are arguing that they should be shielded from liability because Mr. Pittard was just doing his job as Employer Defendants' attorney in processing the TN Visa applications.

Legal Facilitator Defendants misconstrue the facts of *Shuvalova* to support their argument. *Shuvalova* involved TVPRA claims by a wife and daughter against two defendants, a son and father. The complaint alleged that the father, Joe, met the plaintiff mother through an online dating site and fraudulently induced her to move the U.S. by proposing marriage and promising a loving home for her and her daughter. Thereafter, the complaint alleged in part that Joe forced plaintiffs to engage in "heavy, manual labor" on Joe's property for hours a day, and that Joe's son, Dan, helped because he was a "very large man" whose "physical presence" reminded plaintiffs they could not escape. *Shuvalova v. Cunningham*, No. C 10-02159 RS, 2010 U.S. Dist. LEXIS 135502, at *9 (N.D. Cal. Dec. 22, 2010). Unlike the instant case, the complaint in *Shuvalova* did not allege that Dan was party to any of the conversations where Joe used false promises to induce the plaintiffs to move the U.S. The court in *Shuvalova* did dismiss (with leave to amend) claims against the defendant son, Dan, because the complaint did not plead sufficient facts supporting the case against him. However, the court also denied the motion to dismiss TVPRA claims against Joe. Having assumed that the facts as alleged were true, the court held that plaintiffs had "alleged sufficient facts to state a claim for forced labor against Joe" under both 18 U.S.C. 1589 and 18 U.S.C. 1590. *Id.*

Other cases have similarly held that TVPRA claims grounded in abuse of legal processes and/or fraudulent recruitment schemes are sufficiently pled to survive a motion to dismiss under FRCP 12(b)(6). For example, *Mairi Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011) involved a bait-and-switch scheme whereby teachers from the Philippines were recruited by various defendants to perform work as teachers in a Louisiana

,

school district. The scheme involved having plaintiffs incur debt to pay an initial $5,000 non-refundable recruitment fee so that recruiters could finalize their job offer and process their H1-B visa application. After the defendants acquired plaintiffs' visas and passports, they told the plaintiffs for the first time that they would have to pay a second, $10,000 recruitment fee as well as the cost of their airfare before departing to the United States. Once they had arrived in the United States, the defendants threatened to have the teachers deported in order to intimidate and control them. *Id.* at 1145-46. The court held that plaintiffs had sufficiently pled that the recruiter defendants were involved in a fraudulent scheme involving forced labor in violation of 18 U.S.C. § 1589, in that the recruiter defendants' misconduct "*created a situation* where ceasing labor would cause a plaintiff serious harm." *Id.* (emphasis added).[2] With the "international nature" of the matter, the court also held that plaintiffs had sufficiently pled that the recruiter defendants recruited, transported, and provided the plaintiffs for that forced labor, in violation of 18 U.S.C. § 1590. *Id.* at 1147.

In the instant case, Plaintiffs have sufficiently pled that Legal Facilitator Defendants created a situation where ceasing labor would cause the Plaintiffs serious harm (in violation of 18 U.S.C. § 1589) and knowingly "recruit[ed], harbor[ed], transport[ed], provid[ed], or obtain[ed]" Plaintiffs for purposes of that forced labor situation (in violation of 18 U.S.C. § 1589). The complaint tells a coherent story whereby Employer Defendants and Legal Facilitator Defendants together committed fraud using the NAFTA TN Visa system and thereby induced Plaintiffs to leave their homes in Mexico with the expectation of performing professional work

---

[2] *See also Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 111 (D.D.C. 2012) (FRCP 12(b)(6) motion to dismiss denied where plaintiff domestic servant sufficiently pled that employer made promises of reasonable working conditions, educational opportunities, and decent pay, but later isolated and coerced plaintiff using threats of deportation); *Ramos-Madrigal v. Mendiola Forestry Serv., LLC*, 799 F. Supp. 2d 958, 959 (W.D. Ark. 2011) (FRCP 12(b)(6) motion to dismiss denied where Mexican migrant workers employed by defendants to perform forestry work sufficiently alleged that defendants placed them in a forced labor situation through threats of deportation); *Doe v. Siddig*, 810 F. Supp. 2d 127, 129 (D.D.C. 2011).

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 6**

,

as animal scientists in Idaho. The "allegations in the complaint, together with reasonable inferences therefrom," give the Legal Facilitator fair notice that Plaintiffs intend to establish that the forced labor scheme was orchestrated *for the benefit of* Employer Defendants and *by way of* Legal Facilitator Defendants' legal expertise. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). The reasonable inference here is that the Legal Facilitator Defendants knew or should have known that Plaintiffs were being recruited to perform general labor at the dairy, not animal scientist work. When Defendant Pittard was reviewing Plaintiffs' Visa applications, he knew or should have known that the description of work to be performed was false. When Defendant Pittard submitted the Visa applications to the United States government, he knew or should have known that he was committing Visa fraud. And when Defendant Pittard spoke to the Plaintiffs prior to their Embassy interviews, he knew or should have known that Plaintiffs fully expected they would be performing animal scientist work when they arrived in Idaho. Therefore, when Plaintiffs arrived in Idaho, far from home and without the means to leave straight away, Defendant Pittard had already helped create the situation whereby Employer Defendants could force Plaintiffs to perform general labor against their will.

In essence, the allegations in this case are not dissimilar from the facts in *Shuvalova*, *supra*, with some key differences. In that case, the court denied the motion to dismiss TVPRA claims as to Joe, the father, based on a complaint alleging that Joe induced plaintiffs to travel to the U.S. using promises of a happy marriage and loving home. *See Shuvalova v. Cunningham*, No. C 10-02159 RS, 2010 U.S. Dist. LEXIS 135502, at *9 (N.D. Cal. Dec. 22, 2010). Once they arrived, Joe placed plaintiffs in a forced labor situation by forcing them to perform hours of manual labor on his property under threat of serious harm. *Id*. The allegations against Joe's son, Dan, were dismissed because the complaint did not adequately allege his involvement in the scheme. *Id*. However, the facts of *Shuvalova* differ materially from the facts here because the complaint in the instant case allege that Defendant Pittard participated directly in inducing Plaintiffs to travel internationally for purposes of forced labor. The cases would be more alike if

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 7**

,

we assume, *in arguendo*, that Dan had acted as a sort of matchmaker for Joe and the plaintiffs and participated directly in the communications that induced plaintiffs to move to the U.S. If Dan had convinced the lead plaintiff in *Shuvalova* to marry his father, Joe, and knew or should have known that Joe was more interested in laborers than a happy, loving home, then clearly Dan would have violated the TVPRA and lost his motion to dismiss.

Similarly here, Legal Facilitator Defendants was not just a passive observer to the TVPRA violations. Defendant Pittard directly facilitated the forced labor situation and participated in labor trafficking by acting on behalf of the Employer Defendants in the Visa application process. When Defendant Pittard coached Plaintiffs on how to answer questions at their Embassy interviews, he was reinforcing the false promise Employer Defendants had made to them as to the work they would be performing as animal scientists. Thus, Plaintiffs have sufficiently pled the facts necessary to make a claim against Legal Facilitator Defendants under 18 U.S.C. §§ 1589 and 1590. Moreover, Plaintiffs fully expect that discovery will lead to further evidence to support these allegations, and will bring additional light to the criminal conspiracy that led Plaintiffs to fall into this forced labor situation. *See Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).

B.  Civil RICO Claims

The Complaint properly pleads each element of a claim under RICO: it alleges "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.I v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Legal Facilitator Defendants dispute that they committed RICO predicate acts. Dkt. No. 13-1, at 9. Legal Facilitator Defendants further argue that Plaintiffs have failed to demonstrate that the alleged predicate acts were both related and continuous such that the Plaintiffs have established closed-ended or open-ended continuity. Dkt. No. 13-1, at 11 – 12.

,

To the contrary: the Complaint alleges multiple acts of trafficking, unlawful document-related practices in furtherance of trafficking, visa fraud, and mail or wire fraud by Legal Facilitator Defendants. Dkt No. 1, at ¶¶ 76 – 101. Although Legal Facilitator Defendants seem to contend that the alleged predicate acts are not pled with necessary particularity, every predicate act "need not be pled with the 'particularity' required by Fed. R. Civ. P. 9(b)." *Bryant v. Mattel*, No. CV 04-9049 DOC (RNBx), 2010 U.S. Dist. LEXIS 103851, at *29 (C.D. Cal. Aug. 2, 2010). For example, as to RICO claims predicated on mail or wire fraud, the particularity requirements "only apply to (1) the scheme itself; and (2) any mail or wire communications alleged to be fraudulent." *Id.* at *30. In the instant case, Plaintiffs have pled in detail both the scheme itself and each individual predicate act. Dkt No. 1, at ¶¶ 76 – 101. As discussed in Section III(A), *supra*, Legal Facilitator Defendants formed an integral part of the criminal enterprise. The criminal enterprise worked in concert to commit Visa fraud. *Id.* Defendant Pittard himself fraudulently told Plaintiffs that they were being recruited as animal scientists, not general laborers. *Id.* Defendants made these fraudulent representations over email correspondence and telephone. *Id.* By participating in the Visa fraud and mail or wire fraud, Defendant Pittard violated 18 U.S.C. §§ 1589 and 1590 of the TVPRA, which are themselves predicate acts under RICO. Moreover, Defendants engaged in a pattern of racketeering activity by defrauding each of the individual named Plaintiffs over the span of several weeks.[3] In accepting the Employer Defendants' job offer, Plaintiffs reasonably relied on the false representations made by Defendants. *Id.* The criminal enterprise then continued operating throughout months that Defendants employed Plaintiffs. *Id.*[4]

---

[3] Discovery may produce further evidence of racketeering activity. Presently, Plaintiffs have become aware that Defendants may have engaged in similar racketeering activities with other unnamed Mexican veterinarians. Plaintiffs intend to seek discovery on this issue.

[4] Again, discovery is necessary to determine the extent to which Defendants may have continued recruiting Mexican veterinarians using this fraudulent scheme.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 9**

,

Additionally, Plaintiffs have sufficiently alleged facts that would satisfy RICO's continuity requirement. "To satisfy the continuity requirement, [a complainant] must prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e. open-ended continuity." *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*, 302 F.2d 998, 1011 (9th Cir. 2002). Plaintiffs do not dispute that Congress was concerned in RICO with long-term criminal conduct; however, Congress did recognize that often a RICO action will be brought before continuity can be established in this way. *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42, 109 S. Ct. 2893, 2902 (1989). In such cases, liability depends on whether the *threat* of continuity is demonstrated, which would establish open-ended continuity. *Id.* (citing S. Rep. No. 91-617, at 158).

Open-ended continuity is shown by "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Predicate acts that specifically threaten repetition or that become a "regular way of doing business" satisfy the open-ended continuity requirement. *Id.* at 243. "[C]ourts should not erect artificial barriers - metaphysical or otherwise - as a means of keeping RICO cases off the federal dockets." *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 194 (9th Cir. 1987).

Indeed, fortuitous interruption of criminal acts does not preclude a finding of open-ended continuity; long-term criminal conduct may be interrupted, *inter alia,* by termination, the commencement of the RICO action, arrest, indictment, or guilty verdict. *United States v. Busacca,* 936 F.2d 232, 238 (6th Cir. 1991). For example, in *Busacca,* the defendant misappropriated checks over a two and a half month period to pay his personal expenses. He was then removed from his position as Trustee. Examining the totality of the circumstances, the Sixth Circuit decided that the manner in which the predicate acts occurred could recur indefinitely

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR
DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 10**

,

whenever the defendant had expenses to pay. *Id.* That the defendant was willing to disregard established procedures, conceal his activities, and affirmatively misappropriate monies threatened criminal conduct that projected into the future. Similarly, in *Sun Savings, supra*, the court held that four predicate acts that spanned a two-month period satisfied the continuity requirement, reasoning that the alleged predicate acts "did pose a threat of continuing activity because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme." *Id.*; *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528-30 (9th Cir. 1995) (open-ended continuity established despite fortuitous intervention of defendants' termination by employer, where court found that evidence of four separate incidents showed extorting kickbacks had become defendants' regular way of doing business); *Ticor Title Ins. Co. v. Florida,* 937 F.2d 447 (9th Cir. 1991) (continuity requirement satisfied with predicate acts occurring over a thirteen month period); *Ikuno v. Yip,* 912 F.2d 306, 308 (9th Cir. 1990) (continuity requirement satisfied based on two filings of false annual reports for a phantom commodity trading company); *California Architectural Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1469 (9th Cir. 1987) (continuity requirement satisfied with predicate acts that spanned five months).

     In the instant case, Plaintiffs' allegations, if proven, would suffice to establish that defrauding Mexican veterinarians in order to acquire general laborers for Defendants' dairy operations had become Defendants' regular way of doing business. Such a showing would satisfy the open-ended continuity requirement. Indeed, Defendants' willingness to participate in their fraudulent recruitment scheme and their affirmative misrepresentations regarding the scope of work to be performed by these professionals demonstrates that if Defendant had not been fortuitously interrupted by the instant civil action, the predicate acts could have recurred

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR
DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 11**

,

indefinitely.[5] Therefore, Plaintiffs' allegations as to Defendants satisfy the open-ended continuity requirement.

Because the Complaint adequately pleads that Legal Facilitator Defendants engaged in a pattern of racketeering activity with Employer Defendants, as well as the other requisite elements of a RICO claim, Legal Facilitator Defendants' motion to dismiss Plaintiffs' RICO count should be denied.

### C. Leave to Amend Complaint

If the Court finds that Plaintiffs have not set forth sufficient facts to support a claim for unlawful conduct, Plaintiffs respectfully request that the Court grant them leave to file a First Amended Complaint clarifying their allegations. *See* FED. R. CIV. P. 15(a) (leave to amend a complaint "shall be freely given when justice so requires). A party is entitled to amend pleadings once "as a matter of course" at any time before a responsive pleading is served. FED. R. CIV. P. 15(a); *Wages v. IRS,* 915 F.2d 1230, 1235 (9th Cir. 1990), *cert. denied,* 498 U.S. 1096, 112 L. Ed. 2d 1071, 111 S. Ct. 986 (1991).

### IV. Conclusion

Plaintiffs have sufficiently set forth plausible claims for unlawful conduct with regard to documents under the TVPRA and Civil RICO. Legal Facilitator Defendants' motion to dismiss should, therefore, be denied. Were the Court to find that Plaintiffs have not set forth sufficient facts in support of this claim, Plaintiffs respectfully ask the Court for leave to file a First Amended Complaint.

///

///

///

---

[5] Discovery is necessary to determine whether Defendants, in fact, continued to engage in the predicate acts alleged in the Complaint.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 12**

,

|  |  |
|---|---|
|  | Respectfully submitted |
| Dated: March 21, 2017 | CAMACHO MENDOZA LAW |
|  | /s/ Natalie Camacho Mendoza<br>NATALIE CAMACHO MENDOZA<br>Attorneys for Plaintiffs |
| Dated: March 21, 2017 | MARTINEZ AGUILASOCHO & LYNCH, APLC |
|  | /s/ Edgar Iván Aguilasocho<br>EDGAR IVAN AGUILASOCHO<br>MARIO MARTINEZ<br>Attorneys for Plaintiffs |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of March, 2017, I electronically filed the foregoing document with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

Keely E. Duke — ked@dukescanlan.com
Bryan A. Nickels — ban@dukescanlan.com
Daniel V. Steenson — dan@sawtooth.com
David P. Clairborne — david@sawtooth.com

/s/ Molly Hart
MOLLY HART

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGAL FACILITATOR DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) - 13**