Keely E. Duke, ISB #6044
ked@dukescanlan.com
Bryan A. Nickels, ISB #6432
ban@dukescanlan.com
DUKE SCANLAN HALL PLLC
1087 W. River St., Ste. 300
Boise ID 83702
Tel: 208.342.3310
Fax: 208.342.3299

*Attorney for the Defendants Jeremy L. Pittard and Jeremy L. Pittard, Attorney at Law, PLLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CESAR MARTINEZ-RODRIGUEZ; DALIA PADILLA-LOPEZ; MAYRA MUNOZ-LARA; BRENDA GASTELUM-SIERRA; LESLIE ORTIZ-GARCIA; and RICARDO NERI-CAMACHO, <br><br> Plaintiffs, <br><br> v. <br><br> CURTIS GILES, an individual; DAVID FUNK, an individual; and JEREMY L. PITTARD, an individual; the business they controlled and/or operated, including FUNK DAIRY, INC., an Idaho corporation; SHOESOLE FARMS, INC., an Idaho corporation, and JEREMY L. PITTARD, ATTORNEY AT LAW, PLLC, an Idaho Limited Liability Company; and DOES 1-10, <br><br> Defendants. | Case No.: 1:17-CV-0001-BLW <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JEREMY L. PITTARD AND JEREMEY L. PITTARD, ATTORNEY AT LAW, PLLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (DKT 13)** |

   COME NOW defendants Jeremy L. Pittard ("Pittard"), and Jeremy L. Pittard Attorney at

Law, PLLC ("Pittard Law"), through their undersigned counsel of record, and respectfully

submit their reply memorandum of points and authorities in support of their Motion to Dismiss

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JEREMY L. PITTARD AND JEREMEY L. PITTARD, ATTORNEY AT LAW, PLLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (Dkt. 13) - 1**

(Dkt. 13), in response to Plaintiffs' Response in Opposition to Legal Facilitator Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6)(Docket No. 19)("Opposition").  As discussed herein, Plaintiffs' arguments do not resolve the fundamental shortcomings of the allegations against Pittard and Pittard Law, including the lack of allegations regarding Pittard's state of mind and/or any conduct beyond the two limited factual allegations against Pittard, as well as the lack of factual allegations about Pittard Law.  For these reasons, Pittard and Pittard Law's Motion to Dismiss should be granted.

## ARGUMENT

### A.    Plaintiffs' TVPRA claims should be dismissed.

With respect to the Plaintiffs' Trafficking Victims Protection Reauthorization Act ("TVPRA") claims against Pittard and Pittard Law, Plaintiffs primarily rely on other authority in other TVPRA matters, which decisions are plainly factually inapposite to the allegations in this matter.

For example, Plaintiffs make extensive discussion of the Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd., 790 F. Supp. 2d 1134 (C.D. Cal. 2011) decision.  (Opposition at 5-6.)  That matter involved allegations involving the recruitment of teachers from the Philippines into a work program, wherein the teachers alleged that their recruiters altered the teachers' program terms and costs by demanding additional monies and threatening deportation and termination after complaints regarding payments and working conditions.  (*Id.* at 1137-38.)  In rejecting a motion to dismiss by the recruiter-defendants, the Nunag-Tanedo court outlined the nature of the factual allegations against them:

> Plaintiffs allege multiple threats made by Recruiter Defendants to Plaintiffs to support their claim under § 1589(a)(3). For example, Plaintiffs allege that Recruiter Defendants threatened deportation (1) after certain teachers stated that they planned to move due to high living costs (*id.* ¶ 165a); (2) if a certain teacher

tried to bring his family with him to the United States from the Philippines (*id.* ¶ 165c); and (3) after a certain teacher complained to a reporter about poor treatment in the work program (*id.* ¶ 165d). Plaintiffs also allege that Defendant Navarro threatened to sue Plaintiffs for voicing criticisms about Recruiter Defendants' business operations. (*Id.* ¶ 166.) Finally, Plaintiffs state that Navarro threatened to allow Plaintiffs' visas to expire without renewal and to have Plaintiffs' employment terminated when certain teachers asked for refunds of fees and complained about housing issues. (*Id.* ¶¶ 168, 169.)

*Id.* 1144.  The Nunag-Tanedo court highlighted, in particular, the demands for additional payment in terms of financial impact when coupled with the lack of control Plaintiffs had over their passport:

> Specifically, as noted, Plaintiffs allege that Defendants informed Plaintiffs of massive additional fees only after Plaintiffs paid the non-refundable First Recruitment Fees. (*See, e.g.,* FAC ¶¶ 105, 106.) Thus, Plaintiffs were left with the choice of either walking away from the program with approximately $5,000 in debt or obeying Defendants' commands and paying approximately $10,000 more. (*See, e.g., id.* ¶¶ 106, 124–25.) Plaintiffs allege that they felt "powerless to do anything other than conform to Recruiter Defendants' demands because they did not have control over their passports, and if they did not come to work in the United States, they would suffer severe financial harm because of the overwhelming debt they had already accumulated." (*Id.* ¶ 127.) Plaintiffs allege that the $5,000 debt allegedly caused Plaintiffs severe financial harm largely because it is a very large sum of money in the Philippines—"more than one-and-a-half times the average [annual] household income ...." (*Id.* ¶ 108.)

*Id.*[1]  No such allegations exist in this case against Pittard and Pittard Law.  Again, the allegations against Pittard allege only that 1) Plaintiffs were told that Pittard had reviewed immigration documents filled out by Plaintiffs; and 2) Pittard spoke with Plaintiffs regarding their United States Embassy interviews, and an in particular, their job titles and anticipated job duties.  Unlike Nunag-Tanedo, Plaintiffs make no allegations that Pittard (or Pittard Law) made any threats, demanded any sums of money, engaged in any manipulative conduct whilst in possession of

---

[1] As noted by the Nunag-Tanedo court, the recruiter-defendants required the Plaintiffs to surrender control of their passports to recruiter-defendants: "Recruiter Defendants required Plaintiffs to instruct the U.S. Embassy to have Plaintiffs' passports delivered directly to Recruiter Defendants' office following the Embassy interviews, and Plaintiffs' passports and visas were both sent to Recruiter Defendants' office in the Philippines."  *Id.* at 1138.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JEREMY L. PITTARD AND JEREMEY L. PITTARD, ATTORNEY AT LAW, PLLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (Dkt. 13) - 3**

Plaintiff's passports, etc.  Indeed, critically, Plaintiffs make no allegations of any kind regarding any conduct or statements by Pittard and/or Pittard Law alleged to have occurred after the Plaintiffs arrived in the United States.  (*See* Complaint, ¶¶42-63.)

Similarly, Plaintiffs' other cited authority bears a similar problem – where allegations in those other matters demonstrate direct, active involvement in nefarious conduct and/or bad state of mind underlying the actions of the defendants, they wholly differ from the bare allegations against Pittard and Pittard Law in this matter:

- <u>Kiwanuka v. Bakilana</u>, 844 F. Supp. 2d 107, 111 (D.D.C. 2012) – In this matter, the plaintiff alleged active involvement by the defendants in bad conduct following her arrival:

  > Ms. Kiwanuka alleges that the defendants lured her to the United States with promises of reasonable working conditions, educational opportunities, and decent pay. *Id.* ¶¶ 1, 20, 55. However, Ms. Kiwanuka claims that upon both of her arrivals in the United States, the defendants confiscated her passport, held her in isolation, and used threats of deportation to manipulate her into working long hours as a domestic servant and nanny to their children. *Id.* ¶¶ 2, 3, 66–68. Believing that if she stopped working for the defendants she would be deported within twenty-four hours, *id.* ¶ 28, Ms. Kiwanuka worked seven days a week, without breaks to rest or eat, *id.* ¶¶ 3, 69, 70, and allegedly endured Ms. Bakilana's regular verbal and psychological abuse, *id.* ¶¶ 35, 36. …
  > Defendants have overlooked the numerous allegations in plaintiff's complaint that defendants abused the legal process by threatening her with deportation should she fail to perform the work demanded of her.

  (*Id.*, at 111 & 115.)  Plaintiffs in this action make no similar allegations against Pittard or Pittard Law.

- <u>Ramos-Madrigal v. Mendiola Forestry Serv., LLC</u>, 799 F. Supp. 2d 958, 960 (W.D. Ark. 2011) – In this matter, the plaintiffs alleged that immigration papers were held under threats to report the plaintiffs to immigration if the demanded work was not performed:

Furthermore, Plaintiffs have pled sufficient facts to show that in the course of Defendants' alleged concealment or possession of Plaintiffs' visa extension documents, Defendants abused or threatened to abuse the law or legal process in violation of the TVPRA. Plaintiffs pled the following in paragraphs 54–55 of their First Amended Complaint (Doc. 11): "[t]o ensure the Workers did not leave their employment with Defendants, Perfecto Mendiola told the Workers that he had the H–2B extensions but would not provide the H–2B visa extension documents to the Workers until the end of the contract, and he threatened the Workers with serious immigration consequences if they were to leave the work prior to the end of their contract ... and would report them to immigration."

(*Id.*)  No such similar allegations are asserted against Pittard or Pittard Law.

- <u>Doe v. Siddig</u>, 810 F. Supp. 2d 127, 130 (D.D.C. 2011) – In this matter, the plaintiff alleged a long litany of allegations about the defendants' conduct, from a misrepresentation about the plaintiff's age to the INS, to confiscation of her passport and social and education isolation, improper withholding of wages, and physical injuries.  (*Id.* at 130-31.)  Again, plaintiff's allegations spanned an ongoing continuum of conduct, in sharp contrast to the scant allegations regarding Pittard and Pittard Law, which allege nothing more than a single set of conversations with the Plaintiffs, and nothing even suggesting any 1) knowledge on Pittard's part that work conditions would be different than as discussed, 2) any bad state of mind – express or inferred – on the part of Pittard in having those conversations, and/or 3) any substantive allegations as against Pittard Law.

Thus, these cases, more correctly, support Pittard and Pittard Law's position on this motion to dismiss, as they demonstrate the kind of state of mind that the TVPRA statutes and interpretive caselaw require.  *See, e.g.,* <u>United States v. Dann</u>, 652 F.3d 1160, 1170 (9th Cir. 2011)("[T]he scope of the statute is narrowed by the requirement of *scienter*. … The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her."); 18 U.S.C. §1589(b)(" Whoever

knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), **knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means**, shall be punished…")  That is to say, mere assertions that someone was engaged to help another is insufficient. Shuvalova v. Cunningham, No. C 10-02159 RS, 2010 WL 5387770, at *3 (N.D. Cal. Dec. 22, 2010)("In claim one, plaintiffs aver that both defendants knowingly obtained services by force, threats, and intimidation. The complaint, however, does not describe any acts by Dan beyond the general assertion that Joe engaged Dan's help.").[2]

Finally, Plaintiffs' expectation that "discovery will lead to further evidence to support these allegations" simply carries no weight in light of the limited allegations against Pittard and Pittard Law.  The Ninth Circuit has held that it is fair "to require the opposing part to the subjected to the expense of discovery and continued litigation" only where a party's factual allegations "plausibly suggest an entitlement to relief."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)(emphasis added).  Plaintiffs, absent necessary substantive allegations against Pittard and Pittard Law, can make no such showing, and Pittard and Pittard Law should not be subjected to lengthy and expensive discovery to allow Plaintiffs to attempt to unearth what their case against Pittard and Pittard Law might be.

---

[2] Plaintiff's attempt to distinguish Shuvalova fails, simply because the allegations against Pittard and Pittard Law – potentially reviewing immigration documents and conversing with Plaintiffs about their anticipated embassy interviews, but nothing else – are even less than against the dismissed "Dan" in Shuvalova, whose alleged acts at least someone invited speculation about his knowledge about his co-defendant's unlawful activities.  Shuvalova v. Cunningham, No. C 10-02159 RS, 2010 WL 5387770, at *3 ("According to the complaint, Joe forced plaintiffs to engage in heavy, manual labor 'with Dan's help.' Plaintiffs describe Dan as a 'very large man' and argue that his 'physical presence' reminded them that they could not escape.").

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JEREMY L. PITTARD AND JEREMEY L. PITTARD, ATTORNEY AT LAW, PLLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (Dkt. 13) - 6**

For these reasons, Plaintiffs' TVPRA claims (their First and Second Claims for Relief) should be dismissed as against Pittard and Pittard Law.

**B.      Plaintiffs' RICO claim should be dismissed.**

Plaintiffs first contend that "the Complaint alleges multiple acts of trafficking, unlawful document-related practices in furtherance of trafficking, visa fraud, and mail or wire fraud by Legal Facilitator Defendants."   Opposition at 9.   In support of this contention, however, Plaintiffs' point to the paragraphs comprising their Third Cause of Action (Complaint, ¶¶76-101) rather than any substantive factual allegations.   Again, the sole substantive factual allegations made against Pittard and Pittard Law are as follows:

> 37.   On or about September 29, 2014, Defendant Giles sent a questionnaire to Plaintiffs tailored to U.S. Department of State Form DS-160 questionnaire, Plaintiffs wrote that Funk Dairy would be paying for their travel from Mexico to Idaho and that they intended to stay in the United States for 3 years. **On or about September 17, 2014, Defendant Giles confirmed that his attorney Jeremy Pittard had reviewed and approved those documents.**  Employer Defendants did not ever communicated to Plaintiffs' that they would be working as general laborers instead of animal scientists, nor did Employer Defendants state they would not be paying for transportation to Idaho or for housing there.  To the contrary, Employer Defendants concealed these facts and misled Plaintiffs into believing they would be working as animal scientists and that their transportation to Idaho, and housing there, would be paid for by Defendants.
> …
> 40.   On or about the week of October 10, 2014, Defendant Giles, Mercado, and Defendant Pittard each individually spoke telephonically with each of the Plaintiffs to rehearse the interviews they would have with United States Embassy officials in support of their TN Visa applications.  **Each was told to specifically state that they were going to work at Funk Dairy as an "Animal Scientists." Defendants Giles and Pittard told Plaintiffs that if U.S. Department of State officials asked whether they would be performing general labor, such as milking cows or cleaning cow pens, that they should say no.**  Thereafter, Plaintiffs completed their United States Embassy interviews and responded to questions about the work arrangements based upon the Employer Defendants' job offer and description of the work environment.  At the time of their U.S. Embassy interviews, Defendants had not provided Plaintiffs reason to believe that they would be working as anything other than Animal Scientists once they arrived to work for Defendants in Idaho.

(emphases added).   Paragraphs 76-101 of the Complaint, however, comprise only the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that Iqbal and its progeny reject as insufficient.   *See* Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'")

Plaintiffs further argue that their allegations, if proven, would "suffice to establish that defrauding Mexican veterinarians in order to acquire general laborers for Defendants' dairy operations had become Defendants' regular way of doing business" such that the "showing would satisfy the open-ended continuity requirement."   (Opposition at 11.)   In doing so, however, Plaintiffs blur the lines between the allegations they have made against the Employer Defendants, and those against Pittard and Pittard Law.  There is no allegation that Pittard and Pittard Law own and/or operate a dairy, and thus a showing as to how the "regular way of doing business" at "Defendants' dairy operations" makes no showing as against Pittard and Pittard Law.  Moreover, the authority cited by Plaintiffs (Opposition at 11) reinforces Pittard and Pittard Law's motion to dismiss – the authority cited generally relies upon multiple instances over multiple-month periods of time – none of which is alleged as against Pittard and Pittard Law, nor is there any allegation (as required for open-ended continuity) of threat of repetition with respect to Pittard and Pittard Law.

Perhaps more importantly, as is the shortcoming of Plaintiffs' TVPRA claims, Plaintiffs fail to allege or otherwise identify any kind of necessary "reckless scienter" with respect to Pittard and/or Pittard Law, which at least must be alleged generally.   In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 794 F. Supp. 1424, 1436 (D. Ariz. 1992)(citations

omitted)("The standard for aiding and abetting a RICO violation parallels that under Section 10(b). A defendant must have knowledge or act with reckless scienter."); <u>Zazzali v. Ellison</u>, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013).  The absence of such allegations is fatal to Plaintiffs' claim RICO claim.

**C.    Plaintiffs' Request for Leave to Amend Complaint**.

Finally, Plaintiffs request leave to amend their complaint, in the event that the Court finds that they have not stated a claim upon which relief can be granted against Pittard.

As the Ninth Circuit has explained, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  <u>Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990). As discussed above, Plaintiffs are unable to support the viability of the Complaint against Pittard and Pittard Law in its current form; Plaintiffs instead offer speculation and the promise of some future discovery that might yield favorable information.  In light of this, and given that Plaintiffs haven't identified any particular amendments that might be made to cure their Complaint, dismissal without leave to amend is appropriate.[3]

<u>CONCLUSION</u>

For the foregoing reasons, Jeremy L. Pittard, and Jeremy L. Pittard Attorney at Law, PLLC, respectfully requests that their Motion to Dismiss be granted, and that Plaintiffs' Complaint as against them be dismissed with prejudice as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[3] Plaintiffs also note that they still have the right to file an amended complaint without leave, pursuant to Rule 15. (Opposition at 12.)  While this is generally correct, *see generally*, <u>Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC</u>, 532 F.3d 963, 977 (9th Cir. 2008), Plaintiffs have not filed any such amended complaint, so this Court may still rule on Pittard and Pittard Law's motion to dismiss as relates to the current governing Complaint.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JEREMY L. PITTARD AND JEREMEY L. PITTARD, ATTORNEY AT LAW, PLLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (Dkt. 13) - 9**

DATED this 4th day of April, 2017

/s/Keely E. Duke
Keely E. Duke, ISB #6044
ked@dukescanlan.com
Bryan A. Nickels, ISB #6432
ban@dukescanlan.com
DUKE SCANLAN HALL PLLC
1087 W. River St., Ste. 300
Boise ID 83702
Tel:  208.342.3310
Fax:  208.342.3299

*Attorneys for Defendants Jeremy L. Pittard, and Jeremy L. Pittard, Attorney at Law, PLLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of April, 2017, I electronically filed the foregoing document with the U.S. District Court.  Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

| | |
|---|---|
| Edgar I. Aguilasocho | eaguilasocho@farmworkerlaw.com |
| Mario Martinez | mmartinez@farmworkerlaw.com |
| Natalie Camacho Mendoza | natalie@camachomendozalaw.com |
| Daniel V. Steenson | dan@sawtoothlaw.com |
| David P. Claiborne | david@sawtooth.com |

/s/Keely E. Duke
Keely E. Duke
Bryan A. Nickels