DANIEL V. STEENSON
[Idaho State Bar No. 4332]
DAVID P. CLAIBORNE
[Idaho State Bar No. 6579]
SAWTOOTH LAW OFFICES, PLLC
1101 W. River St., Ste. 110
P. O. Box 7985
Boise, Idaho 83707
Telephone:  (208) 629-7447
Facsimile:   (208) 629-7559
E-mail: david@sawtoothlaw.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

(SOUTHERN DIVISION)

| | |
|---|---|
| **CESAR MARTINEZ-RODRIGUEZ, DALIA PADILLA-LOPEZ, MAYRA MUNOZ-LARA, BRENDA GASTELUM-SIERRA, LESLIE ORTIZ-GARCIA,** and **RICARDO NERI-CAMACHO**; <br><br> Plaintiffs, <br><br> vs. <br><br> **CURTIS GILES**, an individual, **DAVID FUNK**, an individual, **FUNK DAIRY, INC.**, an Idaho corporation, **SHOESOLE FARMS, INC.**, an Idaho corporation, **JOHN DOES 1-10**; <br><br> Defendants. | Case No. 1:17-cv-00001-BLW <br><br> **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**COME NOW** the Defendants, Curtis Giles, David Funk, Funk Dairy, Inc., and Shoesole

Farms, Inc., by and through their attorneys of record, Sawtooth Law Offices, PLLC, and submits this

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 1

memorandum in **SUPPORT** of their *Motion for Summary Judgment*, filed herewith.

## I.   FACTUAL BACKGROUND.

For a discussion of the material and undisputed facts, and in order to ensure this memorandum remains within the page limits set by the Court, please see the *Statement of Facts in Support of Defendant's Motion for Summary Judgment*, filed herewith.

## II.   PROCEDURAL HISTORY.

Plaintiffs initiated this action on January 3, 2017.  *Complaint*, Dkt. 1.  The initial action included claims against attorney Jeremy L. Pittard, as well as Defendants, and asserted a conspiracy theory among Defendants, attorney Pittard and others.  Id.  Attorney Pittard submitted a *Motion to Dismiss* on February 28, 2017.  Dkt. 13.  On September 14, 2017, the Court entered its *Memorandum Decision and Order*, Dkt. 23, determining that there were insufficient factual allegations for the claims against attorney Pittard and Plaintiffs' conspiracy theory.  Plaintiffs were granted leave to file an amended complaint to make the necessary factual allegations.  Id.  On October 16, 2017, Plaintiffs filed their *First Amended Complaint*, Dkt. 24, wherein they abandoned any claims against attorney Pittard and abandoned their conspiracy theory.  Plaintiffs maintained claims against Defendants, as discussed and outlined in the argument below.

Defendants answered the amended complaint on October 18, 2017, denying liability as to all claims.  *Answer to First Amended Complaint*, Dkt. 25.  Both parties have demanded a jury trial.  A *Case Management Order* was entered by the Court on November 3, 2017, Dkt. 26, and modified on May 15, 2018, Dkt. 33, notably setting forth the following -

1.   Plaintiffs shall disclose experts, and their Rule 26(a)(2)(B) reports, by March 26,

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

2018 (undisclosed opinions will not be allowed);

2.      Expert Discovery Cut-off of September 28, 2018;

3.      Factual Discovery Cut-off of September 28, 2018 (this is the deadline to complete discovery, meaning discovery requests must be made sufficiently in advance to require response within and before the deadline); and

4.      Dispositive Motion Cut-off of October 26, 2018 (not to be extended even if discovery disputes exist).

Defendants now bring the instant *Motion for Summary Judgment*, at such time that Plaintiffs' expert disclosure deadline has expired. Plaintiffs have made no substantive disclosure of any expert opinions to substantiate their claims, or to establish any claim for damages.

## III.   STANDARD OF REVIEW.

This Court may grant summary judgment only if no genuine question of material fact exists and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). More specifically, a party moving for summary judgment is entitled to prevail only if -

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Id. This Court has properly stated the standard for determination of a motion for summary judgment as follows:

> The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact, so that the moving party is entitled to judgment as a matter of law. In addition, the evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility determinations. Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 3

sufficient to support a jury verdict in its favor.  In meeting this burden, the non-moving party must go beyond the pleadings and show "by its affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  This evidence must be admissible because "only admissible evidence may be considered in ruling on a motion for summary judgment."

Idaho Rural Council v. Bosma, 143 F.Supp.2d 1169, 1174 (D. Idaho 2001) (Winmill, C.J.) (Internal citations omitted).

IV.   **ARGUMENT.**

A.   *Plaintiffs' federal law claims fail inasmuch as Plaintiffs were not subject to forced labor, nor trafficked for purposes of servitude.*

Plaintiffs' First Claim for Relief asserts that Defendants violated the **forced labor** provisions of the *Trafficking Victims Protection Reauthorization Act*, 18 U.S.C. § 1589, "by (a) abusing the legal process through obtaining fraudulent NAFTA professional visas with no intention of providing professional work to Plaintiffs; and by (b) causing Plaintiffs to fear that they would be deported to Mexico for complaining about illegal working conditions and breach of contract, as Defendants had confiscated and made copies of Plaintiffs' passports."  *First Amended Complaint*, Dkt. 24, at ¶ 64. Plaintiffs' Second Claim for Relief asserts that Defendants violated the **trafficking into servitude** provisions of the *Trafficking Victims Protection Reauthorization Act*, 18 U.S.C. § 1590, because they "knowingly recruited, harbored, transported, provided, and obtained Plaintiffs to provide general dairy labor and services to the Defendants, through fraud, deceit, and misrepresentation, knowing that Plaintiffs, who are professionals, would not knowingly agree to work as general laborers for a dairy."  *First Amended Complaint*, Dkt. 24, at ¶ 70.

18 U.S.C. § 1589, the **forced labor** provision, in relevant part, provides as follows -

(a)  Whoever knowingly provides or obtains the labor or services of a person by any

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

one of, or by any combination of, the following means–
(1)  by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2)  by means of serious harm or threats of serious harm to that person or another person;
(3)  by means of the abuse or threatened abuse of law or legal process; or
(4)  by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
shall be punished as provided under subsection (d).
. . .
(c)  In this section:
(1)  The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.
(2)  The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589.  Slavery or involuntary servitude are not permissible in the United States. Section 1589 was passed to implement the Thirteenth Amendment against slavery or involuntary servitude. Muchira v. Al-Rawaf, 850 F.3d 605, 617 (4th Cir. 2017). Further, section 1589 was passed by Congress to "address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence. Id. at 618 (emphasis added). These situations involve people who have been held through nonviolent coercion in addition to physical or legal coercion.  Id. at 617.  The facts of this case do not demonstrate that Defendants are engaged in some seriously wrongful behavior involved in forced labor or trafficking of humans.  The facts, as described above, show that Defendants acted within the law at all times, fulfilled their representations to Plaintiffs, and made

no threats to abuse the legal process, rather always acting and stating an intent to act within appropriate legal processes.  Case law further supports Defendants' argument that the facts of this case do not form a basis for a servitude claim.

In Muchira, the plaintiff was brought to the United States to work for a Saudi family as a maid. The employment contract signed by the parties stated that the plaintiff would be paid $1600, but prior to the interview with the embassy the plaintiff was told that she would be paid $400 in cash per month. When the parties arrived in the United States, the plaintiff had adequate housing. In the first location, the plaintiff received her own single bedroom apartment. In the second location, the plaintiff received the whole basement to live in. The plaintiff's only complaints were that the children upstairs in the house would be loud and keep her awake, and that her bedroom was cold at night. Further, when the plaintiff arrived in the United States she gave her passport to the defendants. The defendants only allowed the plaintiff to have her passport to open a bank account and to transfer money to her family in Kenya. The defendants also gave the plaintiff a cell phone and did not restrict her from going on walks and jogs outside the house.

The plaintiff in Muchira asserted that the defendants "knowingly … obtained her labor for services … by means of serious harm or threats of serious harm." Muchira, 850 F.3d at 618. Section 1589 contains an express *scienter* requirement. Muchira, 850 F.3d at 618. The jury must be able to deduct from the evidence "that the employer intended to cause the victim to believe that she would suffer serious harm—from the vantage point of the victim—if she did not continue the work." Id. Further, the crux of the analysis under serious harm "is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her" if she left her

employment. Id. The court has also noted that it must consider "the particular vulnerabilities of a person in the victim's position." Id. It is also necessary that the acquiescence by the victim is objectively reasonable under the circumstances, which creates an objective test of whether there was undue pressure that analyzes how a reasonable employee would behave. Id.

In Muchira, the court affirmed the lower court's decision of granting summary judgment to the defendant under these facts and circumstances.  The plaintiff came to the United States willingly and the family never physically abused her. She claimed that they verbally reprimanded her, but the defendants never made it a situation where she could not leave the employment with them. She was able to return back to Kenya to take care of her family at one point during the employment. The court also reasoned that the plaintiff was not in a particularly vulnerable position. She was 32 years old and had experience as a household employee. Additionally, she came to the country on her own free will.

Next, the plaintiff in Muchira asserted that the defendants knowingly coerced her into providing her labor and services by "means of the abuse or threatened abuse of law or legal process." Muchira, 850 F.3d at 622.  Violation of this section of 1589 requires that the defendant "knowingly" abused the law or legal process to coerce the victim to provide labor or services against her will. Muchira, 850 F.3d at 622-23.  The plaintiff claimed that because the defendants took her passport they were coercing her to provide labor or services against her will. Id. However, the court found those implicit threats of arrests consisted little more than conclusory and speculative allegations that fall short of establishing a reasonable fear. Id. The Court also found that the plaintiff was an immigrant granted a temporary work visa and that she was not allowed to seek or accept other

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

employment while in the country and, therefore, being forced to return to Kenya was a possible and

legitimate consequence that would follow her decision to leave her employment. Id.

The facts of the Muchira case are similar to the instant action. Like the plaintiff in Muchira,

Plaintiffs here were paid for their services. Moreover, they were not forced to come into the country

and made that decision of their own free will. They knew prior to their arrival that they would be

working a dairy farm. Further, Mr. Giles only took their passports when they were in the United

States to make copies of the same and immediately returned them. Relative to threats of deportation,

all Mr. Giles told the Plaintiffs was that if their employment with Funk Dairy ended he would have

to report that to the government, and could result in their removal from the country. This, of course,

is acknowledged by Plaintiffs as a proper legal process.[1]

In Lagayan v. Odeh, the court discussed the a claim of involuntary servitude. 199 F. Supp.

3d 21, 28 (D.C. 2016). Specifically, the court addressed what constituted "a condition of servitude

---

[1] Under the provisions laid out by 8 C.F.R. § 214.6(a), a non-citizen can seek a Visa to enter the United States temporarily to engage in business activities at a professional level for a 3-year period, subject to annual renewal. A business activity at a professional level is an undertaking which would require that the individual has successfully completed a baccalaureate degree or appropriate credentials demonstrating status as a professional. 8 C.F.R. § 214.6(b). The Plaintiffs in this suit were all accredited with the appropriate degrees through a Mexico university. However, it is noteworthy that the animal science programs they completed in Mexico are not accredited for veterinary licensure in the United States, meaning that the maximum professional qualifications of the Plaintiffs in the U.S. was in an assisting capacity to licensed professionals in the U.S. The individual must also perform business activities for a United States entity. Id. That entity in this case is for Funk Dairy, Inc. Further, temporary entry as defined by the statute "means entry without the intent to establish permanent residence." Id. The statute also notes that an individual with a TN Visa who wants to change their employment "must have the new employer file a Form I-129 …." 8 C.F.R. § 214.6(i)(1). Further, the section notes that "employment with a different or with an additional employer is not authorized prior to Department approval of request." Id. It is within the scope of the current employer to inform the employee that they would be subject to removal (i.e. deportation) if the employee sought work from a different employer and the current employer did not approve of that change.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 8

induced by means of any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint" or "the abuse or threatened abuse of the legal process." Id.  There, the court reasoned that allegations involving the defendant taking and secreting plaintiff's passport, making plaintiff work over 15 hours per day, restricting plaintiff's travel and movement, restricting plaintiff's communications, and not compensating plaintiff were sufficient to show the plaintiff had a claim for relief.  Plaintiffs treatment in this case is nowhere near these conditions - Plaintiffs retained their passports, worked a regular shift comparable to all other employees, were free to travel and move about as they wished, were free to communicate with others, and were fairly compensated.

18 U.S.C. § 1590, the **trafficking into servitude** provision, in relevant part, provides as follows -

> (a)  Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. . . ..
> (b)  Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

18 U.S.C. § 1590.  Lagayan v. Odeh, previously cited, holds that success on a claim brought under § 1590 depends on the sufficiency of the claims alleged under § 1589 and more specifically the TVPA. 199 F. Supp. 3d at 29.  All of Plaintiffs' TVPA claims fail for the reasons discussed above. The facts demonstrate that Defendants employed Plaintiffs under a *bona fide* Visa program, that Plaintiffs were vetted for the same by the U.S. Department of State, and that Funk Dairy employed Plaintiffs in a manner consistent with the representations made to the U.S. Department of State.  The facts, and the law, do not support Plaintiffs' federal claims under the TVPA.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

B.      *The material and undisputed facts show that Defendants committed no act of fraud upon Plaintiffs.*

Plaintiffs' Third Claim for Relief, that of intentional fraud, asserts that Defendants made false representations to Plaintiffs with regard to their employment, and terms and conditions thereof, with Defendants. *First Amended Complaint*, Dkt. 24, at ¶ 74.  In particular, Plaintiffs assert Defendants falsely stated the terms of their employment incident to the NAFTA Professional Visa Applications. *Id.*, at ¶ 78.  Related to the foregoing are incidental claims, sounding in fraud, styled by Plaintiffs as Concealment (Fourth Claim for Relief) and False Promise (Fifth Claim for Relief), but essentially alleging fraud by Defendants in relation to employing Plaintiffs, and the terms and conditions of their employment. *Id.*, at ¶¶ 82, 87.  A plaintiff alleging fraud must prove each of the following elements by clear and convincing evidence - "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." G&M Farms v. Funk Irrigation Co., 119 Idaho 514, 518 (1991).  Opinions and predictions, or personal feelings and beliefs, cannot form the basis of a fraud claim. Country Cove Development, Inc. v. May, 143 Idaho 595, 600 (Idaho 2006).

The facts of this action demonstrate that the representations made by Funk Dairy incident to employment of the Plaintiffs were all fulfilled.  There were no false promises; no material facts were concealed, and Plaintiffs received exactly what was promised.  The most evident statement of the representations made incident to employment are those set forth by Funk Dairy in its letter of support incident to Plaintiffs' Visa applications.  The deposition testimony of Plaintiffs reveals each received

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

exactly what was represented, in terms of employment, to the U.S. government in order that each Plaintiff could enter the United States.  While the statements made do not represent each and every task Plaintiffs were to perform incident to employment, the representations contain the material tasks related to Plaintiffs' employment as animal scientists.

The gist of Plaintiffs' complaint is that because they had to perform incidental general labor tasks, they were duped in to employment and were not performing the tasks of an animal scientist. This position twists the facts and obscures the truth.  Each Plaintiff was employed as an animal scientist and did in fact perform tasks related to the same.  They admit as much.  Plaintiffs were also called on to perform other general labor tasks, but that does not mean they were no longer animal scientists.  An associate attorney could not contend he is not employed as an attorney because he is called on to make photocopies or perform typing.  Likewise, Plaintiffs cannot claim they were not employed as animal scientists because they were called on to perform sanitation tasks - duties integral to food production environments.  The facts just do not support Plaintiffs' claims of fraud, concealment or false promise, and as such judgment ought to be entered for Defendants on those claims.

   C.   *Plaintiffs' claim of negligent misrepresentation lacks evidentiary and legal support.*

Plaintiffs' Sixth Claim for Relief alleges negligent misrepresentation by Defendants, again focusing on the representation made relative to employment, and the terms thereof.  *First Amended Complaint*, Dkt. 24, at ¶ 91.  For the reasons set forth and explained above, this claim fails inasmuch as the facts do not support the allegations.  Additionally, the compensable loss sought by Plaintiffs is purely economic in nature, there being no attendant personal injuries, and as such recovery may

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

not be had in tort.  Aardema v. U.S. Dairy Sys., 147 Idaho 785, 792 (2009).  See also G&M Farms,

119 Idaho at 527.  Moreover, the tort of negligent misrepresentation requires the existence of a

special relationship, which Idaho courts have narrowly applied and have not applied to the employer-

employee relationship.  Aardema 147 Idaho at 792.  As such, as a matter of law, as well as based on

the facts, the negligent misrepresentation claim fails.

     D.    *Plaintiffs' contract claims lack evidentiary and legal support.*

     Plaintiffs assert claims of breach of contract (Seventh Claim for Relief) and breach of the

implied covenant of good faith and fair dealing (Eighth Claim for Relief), asserting a contract of

employment was formed between the parties relative to Plaintiffs' employment, and the terms

thereof. *First Amended Complaint*, Dkt. 24, at ¶¶ 97, 103.  A breach of contract is non-performance

of any contractual duty of immediate performance.  Independence Lead Mines Co. v. Hecla Mining

Co., 143 Idaho 22, 28 (2006).  It is a failure, without legal excuse, to perform any promise which

forms the whole or part of a contract.  Id. A substantial or material breach of contract is one which

touches the fundamental purpose of the contract and defeats the object of the parties in entering into

the contract.  Id. Whether a breach of contract is material is a question of fact.  Id.  In the record now

existing, as explained above, there is ample and sufficient evidence demonstrating that Plaintiffs

each received precisely what was promised from Defendants incident to their employment.  The

breach of contract claim lacks factual support.

     The implied covenant of good faith and fair dealing is a covenant implied by law in the

parties' contract.  Bakker v. Thunder Spring-Wareham, LLC, 141 Idaho 185, 192 (2005).  The

covenant requires that the parties perform, in good faith, the obligations imposed by their agreement,

and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract. See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc., 121 Idaho 266, 289 (1991). Any action by either party which violates, nullifies or significantly impairs any benefit of the contract is a violation of the implied-in-law covenant. Metcalf v. Intermountain Gas Co., 116 Idaho 622, 627 (1989).

To the extent the covenant of good faith and fair dealing does apply, Idaho has rejected "the amorphous concept of bad faith as the standard for determining whether the covenant has been breached." Id. at 627. Instead, "the covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions." Jenkins v. Boise Cascade Corp., 141 Idaho 233, 243 (2005). An objective determination can only be made by considering a party's reasonableness in carrying out the contract provisions. Hecla Mining Co., 143 Idaho at 27.

The evidence does not support Plaintiffs' assertion that Defendants breached the implied covenant of good faith and fair dealing. Plaintiffs received the compensation and employment promised. Defendants did not frustrate their performance. Defendants never took any action, or threatened any action, that was not legally justified.

In addition to the above, Plaintiffs' allegations related to employment tend to assert a term of employment equal to three years was promised. While Defendants dispute such a claim, and insist the relationship was always at-will, in any event the application of IDAHO CODE § 9-505 would bar such a claim, and any resultant damages, inasmuch as no signed instrument exists that established an employment term.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 13

E.      *Plaintiffs' state law claims must be dismissed due to lack of proof of injury.*

As to all of Plaintiffs' tort and contract claims, they seek recovery of compensatory and punitive damages. *First Amended Complaint*, Dkt. 24, at ¶¶ 80, 85, 89, 95, 100, 104. As to recovery of punitive damages under these state law claims, no recovery is permissible under the current record based on IDAHO CODE § 6-1604. As to compensatory damages, Plaintiffs have failed to articulate the nature, scope, extent or amount of those damages, despite repeated opportunities to do so. They have failed to provide such information in written discovery, in oral deposition, and in expert disclosures. Proof of injury is a necessary element of the tort and contract claims, and the lack of proof of the same - i.e. lack of proof of damages - is fatal to each and every tort and contract claim. Harris, Inc. v. Foxhollow Constr. & Trucking, 151 Idaho 761, 770 (2011). Plaintiffs cannot prove any injury in relation to their state law claims, and rather the facts demonstrate that Plaintiffs earned more money working in the United States than they had previously working in Mexico, exemplifying the fact that no injury occurred. Plaintiffs were always compensated as agreed, and thus suffered no injury. Each of the state law claims must be dismissed because Plaintiffs suffered no injury, even if liability existed.

F.      *This case must be dismissed for lack of jurisdiction if the federal claims are dismissed.*

Should this Court grant summary judgment for Defendants as to the federal TVPA claims, but not as to any of the state law claims, then in such event the Court should decline to further exercise jurisdiction in this action, and the entire action ought to be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14

G.    *There is no basis for any claims against Defendants Shoesole Farms, Funk and Giles.*

Plaintiffs have included in this action, as Defendants, Curtis Giles, David Funk and Shoesole Farms, Inc., despite the fact that Plaintiffs were, at all relevant times, employed by and under the direction of Funk Dairy, Inc.  Plaintiffs have offered no evidence, and alleged no facts, to justify the piercing of the corporate veil afforded by Funk Dairy's incorporation under Idaho law.  Piercing the corporate veil is "the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts." <u>VFP VC v. Dakota Co.</u>, 141 Idaho 326, 335 (2005) (citing BLACK'S LAW DICTIONARY 1184 (8th ed. 2004)).  The theory allows the fact finder to disregard the corporate form, thereby making individuals liable for corporate debts or making corporate assets reachable to satisfy obligations of the individual. <u>Id</u>.  In order for a corporation to be an alter ego of an individual, there must be (1) a unity of interest and ownership to a degree that the separate personalities of the corporation and individual no longer exist <u>and</u> (2) if the acts are treated as acts of the corporation an inequitable result would follow. <u>Vanderford Co. v. Knudson</u>, 144 Idaho 547, 556-57 (2007).  Plaintiffs have offered no evidence to meet this standard.

Plaintiffs also fail to offer evidence to establish an agency liability on the part of Giles, Funk or Shoesole Farms.  With respect to agency law, Idaho routinely follows the *Restatement of Agency*. <u>See, e.g.</u>, <u>Rockefeller v. Grabow</u>, 136 Idaho 637 (2002) (relying upon *Restatement* to explain fiduciary duties of a real estate agent to his client); <u>Richard J. & Esther E. Wooley Trust v. Debest Plumbing</u>, 133 Idaho 180 (1999) (relying upon *Restatement* to explain duties of master-servant relationship).  The *Restatement* explains that "[a]n agent is subject to liability to a third party harmed

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15

by the agent's tortious conduct.   RESTATEMENT (THIRD) OF AGENCY § 7.01.   <u>See also</u>

<u>McAlvain v. General Ins. Co.</u>, 97 Idaho 777 (1976) (holding that an agent can always be personally

liable under ordinary tort principles).   However, Plaintiffs have failed to offer evidence of any

tortious conduct by Giles, Funk or Shoesole Farms that resulted in personal injuries or property

damages to Plaintiffs.   Moreover, Plaintiffs have not even alleged the existence of an agency

relationship.

> H.    *The Court ought to strike Plaintiffs' Expert Disclosure and prohibit Plaintiffs from offering expert opinions in this action.*

Rule 26(a)(2), FED. R. CIV. P., governs the disclosure of an expert and his or her testimony.

A party must disclose its anticipated expert testimony in a report.  <u>Id.</u>  An expert disclosure must be

"accompanied by a written report—prepared and signed by the witness—if the witness is one

retained or specially employed to provide expert testimony in the case or one whose duties as the

party's employee regularly involve giving expert testimony."  <u>Id.</u>  It is mandatory that the report

contain information set forth at Rule 26(a)(2)(B), FED. R. CIV. P.  When a party does not comply

with said rule, the Court may use Rule 37, FED. R. CIV. P., to prevent the party from using the expert

or the information supplied by the witness as evidence on a motion, at a hearing, or at trial. <u>See</u> Rule

37(c)(1), FED. R. CIV. P.

In this action, the Court should strike the Plaintiffs' expert disclosure and exclude any expert

testimony because Plaintiffs failed to provide the requisite information required by the rule.  Further,

Plaintiffs claim that they are waiting for the Defendants to produce information that would allow

them to determine their damages in this case, but that is a stalling effort by the Plaintiffs to create

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 16

a damage computation that is wholly unreliable.  Moreover, Plaintiffs would be in possession of information bearing on their injuries, not Defendant.

Parties are required to "disclose the identity of each expert witness accompanied by a written report prepared and signed by the witness." Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Further, "an expert affidavit is to contain a complete statement of all opinions the witness will express and the basis and reasons for them." Engler v. MTD Products, Inc., 304 F.R.D. 349, 354 (N.D.N.Y. 2015). Additionally, "it should be assumed that at the time an expert issues his or her report, that report reflects his or her full knowledge and complete opinions on the issue for which his or her opinion has been sought.  Id.

In this case, Plaintiffs have disclosed an expert, within the "Expert Disclosure" identified in the *Statement of Facts* filed herewith.  The expert is anticipated to provide information regarding human trafficking. See Expert Disclosure, at  2. Plaintiffs have claimed that the expert cannot form any opinions or prepare any exhibits or summaries to support her opinions because the Defendants have not provided all the necessary documents.  *Id.*  Defendants have provided all the necessary documentation and information to help form the expert's opinions. Pay stubs, emails, and relevant employment documents from the Defendants have been provided to the expert to form an opinion on the case.  Moreover, Plaintiffs claim that they are relying on their expert to provide a damages calculation for the case. Any damage calculation can be created from the information that has been provided to Plaintiffs, or is in their possession and unique knowledge.  To-date, however, Plaintiffs have not disclosed any expert opinion on the issue of damages.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 17

When a party fails to disclose information under Rule 26(a)(2)(B), "the party is not allowed to use that information or witness to supply information on a motion, at a hearing, or at trial unless the failure was substantially justified or harmless." <u>Engler v. MTD Products, Inc.</u>, 304 F.R.D. 349, 354 (N.D.N.Y. 2015). Harmless has been interpreted to mean "an absence of prejudice." <u>Id.</u> Additionally, the burden of proving a failure to disclose was harmless moves to the party who failed to timely disclose. <u>Id.</u>

Plaintiffs have prejudiced the Defendants due to their inability to provide an expert who has formed opinions, or provided exhibits or summaries to support their opinions. This has precluded the Defendants from providing an expert that would be able to rebut the Plaintiffs' expert because the filing deadline for Defendants has passed and up to this point the Plaintiffs have not provided any supplemental information revolving around their expert witness. The disclosure that Plaintiffs provided to the Defendants is a bare bones statement that the expert will testify about labor trafficking, agricultural working conditions, and immigration issues - nothing is said as to damages or injury. Additionally, Plaintiffs' expert disclosure simply provides the expert's qualifications to testify as an expert. This disclosure occurred on March 26, 2018. Since that time Plaintiffs have not supplemented the material, which has put an undue burden on the Defendants to find an expert who would be qualified to rebut the Plaintiffs' unknown expert opinions. Under these circumstances, the Court ought to strike the Expert Disclosure and prevent Plaintiffs from offering any expert opinion on any motion or at trial.

V.    **CONCLUSION.**

For the above and foregoing reasons, *Defendant's Motion for Summary Judgment*, filed herewith, ought to be **GRANTED**.   Alternatively, if the Court grants summary judgment for Defendant as to the federal question claims, the Court ought to **DISMISS** this action due to lack of jurisdiction over the state law claims.   As a final alternative, the Court ought to strike Plaintiffs' Expert Disclosure and prohibit Plaintiffs from offering any expert opinion in this action.

**DATED** this 26th day of September, 2018.

SAWTOOTH LAW OFFICES, PLLC


by: /s/ *David P. Claiborne*
David P. Claiborne

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing document was served on the following on this 26th day of September, 2018 by the following method:

| | |
|---|---|
| **NATALIE CAMACHO MENDOZA** | [__] U.S. First Class Mail, Postage Prepaid |
| **CAMACHO MENDOZA LAW** | [__] U.S. Certified Mail, Postage Prepaid |
| P.O. Box 190438 | [__] Federal Express |
| Boise, Idaho 83719 | [__] Hand Delivery |
| Telephone: (208) 342-2960 | [__] Facsimile |
| Facsimile: (208) 629-0177 | [_X_] Electronic Mail or CM/ECF |
| E-Mail: natalie@camachomendozalaw.com | |
| *Attorneys for Plaintiffs* | |

| | |
|---|---|
| **MARIO MARTINEZ** | [__] U.S. First Class Mail, Postage Prepaid |
| **EDGAR IVAN AGUILASOCHO** | [__] U.S. Certified Mail, Postage Prepaid |
| **MARTINEZ AGUILASOCHO & LYNCH** | [__] Federal Express |
| P.O. Box 11208 | [__] Hand Delivery |
| Bakersfield, California 93309 | [__] Facsimile |
| Telephone: (661) 859-1174 | [_X_] Electronic Mail or CM/ECF |
| Facsimile: (661) 840-6154 | |
| E-Mail: eaguilasocho@farmworkerlaw.com | |
| *Attorneys for Plaintiffs* | |

                by: /s/ *David P. Claiborne*
                    David P. Claiborne