Mario Martínez (*pro hac vice*, CA SBN 200721)
Edgar Iván Aguilasocho (*pro hac vice*, CA SBN 285567)
MARTINEZ AGUILASOCHO & LYNCH, APLC
P.O. Box 1998
Bakersfield, CA 93301
Telephone:     (661) 859-1174
Facsimile:      (661) 859-6154
E-mail:           info@farmworkerlaw.com

Natalie Camacho Mendoza (ISB 4127)
CAMACHO MENDOZA LAW
P.O. Box 190438
Boise, ID 83719
E-mail:           natalie@camachomendozalaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CESAR MARTINEZ-RODRIGUEZ, DALIA PADILLA-LOPEZ, MAYRA MUNOZ-LARA, BRENDA GASTELUM-SIERRA, LESLIE ORTIZ-GARCIA, and RICARDO NERI-CAMACHO,<br><br>Plaintiffs,<br><br>v.<br><br>CURTIS GILES, an individual, DAVID FUNK, an individual, FUNK DAIRY, INC., an Idaho corporation, SHOESOLE FARMS, INC., an Idaho corporation, and JOHN DOES 1-10,<br><br>Defendants. | Case No.: 1:17-cv-00001-DCN<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 35-1) AND PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE** |

**COME NOW** Plaintiffs Cesar Martinez-Rodriguez, Dalia Padilla-Lopez, Mayra Munoz-

Lara, Brenda Gastelum-Sierra, Leslie Ortiz-Garcia, and Ricardo Neri-Camacho ("Plaintiffs"), by

and through their attorneys of record, and, **PURSUANT TO** District Local Rule of Civil Procedure 7.1, subdivision (c), hereby submit the following *Response to Defendants' Statement of Material Facts in Support of Defendants' Motion for Summary Judgment*, Dkt. 35-1 (Section I, *infra*) and *Plaintiffs' Statement of Material Facts in Dispute* (Section II, *infra*) **IN SUPPORT OF** *Plaintiffs' Opposition to Defendants' Motion for Summary Judgment*, filed herewith.

**I.    PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' ADMIT and/or do not dispute the following statement of facts as stated by Defendants: Numbers 1, 2, 3, 4, 6, 8, 14, 20, and 22. Plaintiffs' DISPUTE in whole or in part the following statement of facts as stated by Defendants: Numbers 5, 7, 9–13, 15, 16–19, 21, and 23–32. To ensure this document remains within the page limits set by District Local Rule 7.1, Defendants' factual statements are not repeated herein. Plaintiffs submit the following responses:

**Response to No. 5:**    Deny in part. Defendants began recruiting skilled labor from Mexico in the Fall of 2014, specifically intending to obtain workers that qualified for the NAFTA TN Visa program, but it was not done to raise the overall skill of Funk Dairy's labor force. Rather, their efforts were in direct response to the drastic cut in Funk Dairy's labor force in April of 2013 after U.S. Immigration and Customs Enforcement ("ICE") discovered seventy-eight percent (78%) of Funk Dairy employees were undocumented aliens. Ex. 5, at 6. Defendants were interested in NAFTA TN Visas to address employee turnover. Ex. 26, at 31–34.

**Response to No. 7:**    Deny in part. Admittedly, Plaintiffs did not have licenses to practice veterinary medicine in the United States while employed at Funk Dairy. However, that is irrelevant as Defendants hired Plaintiffs as animal scientists, not as veterinarians. Ex. 4.[1]

---

[1] Defendants submitted the same letter in support of each Plaintiff's NAFTA TN Visa application. Therefore, Plaintiffs only submit herewith one copy as an exhibit.

Animal scientist and veterinarian are distinct professions under NAFTA with distinct qualifications. *See* 8 C.F.R. § 214.6, Appx. 1603.D.1 (providing that veterinarians require "D.V.M., D.M.V., or Doctor en Veterinaria; or state/provincial license," while animal scientists require "Baccalaureate or Licenciatura Degree").

**Response to No. 9:** Deny in part. Plaintiffs admit they were authorized to enter the United States for purposes of employment with Funk Dairy as animal scientists. However, Plaintiffs dispute Defendants' definition animal scientist to the extent they emphasize certain words over others, which Plaintiffs find greatly misleading. In particular, Defendants deemphasize the "training and experience . . . that [an animal scientist] uses . . . to improve animal conditions." *See* U.S. BUREAU OF LAB. STAT., Occupational Outlook Handbook, *Agricultural and Food Scientists* (last modified Apr. 13, 2018).

**Response to No. 10:** Deny in part. Plaintiffs admit that employment included the terms stated in subparts (b)–(d). In regards to subpart (a), Plaintiffs were offered a minimum $10 per hour; however, the incentive system for wage increases was never made clear as Defendants would arbitrarily give and then take away raises. Ex. 12. Moreover, Plaintiffs were not paid a higher rate than other employees without the same training level. Ex. 12; Ex. 26, at 12–13. Additionally, Plaintiffs dispute No. 10 to the extent it omits the three-year employment period that Defendants promised Plaintiffs. Ex. 4.

**Response to No. 11:** Deny in whole. In offering Plaintiffs employment, Defendants vaguely stated that they would help with expenses in the United States, including transportation to and from work, housing, and childcare, which Plaintiffs understood to mean that Defendants would cover all those costs. Ex. 20, at 26–27; Ex. 21, at 29; Ex. 22, at 24–25, 42; Ex. 23, at 45–46; Ex. 24, at 22, 35–36. Defendants mischaracterize the statement Plaintiff Gastelum made in

her deposition: Defendant Giles did not tell Plaintiffs they had to arrange their own means of transportation until after they had arrived in Idaho. Ex. 24, at 34. Additionally, Defendants omit that Deposition Exhibit 21 is the rental "agreement" that Defendants forced upon Plaintiffs after they were already living in that housing and under the belief that they were not responsible for rent and utilities. Ex. 19, at 39–40; Ex. 21, at 37, 41; Ex. 22, at 74–75; Ex. 23, at 46–47; Ex. 24, at 36–37.

**Response to No. 12:** Deny in part. In offering Plaintiffs employment, Defendants told Plaintiffs the work would involve "practical, hands-on experience," but not that it would be physically demanding. Ex. 19, at 49; Ex. 20, at 27; Ex. 21, at 30; Ex. 22, at 23, 43; Ex. 24, at 28, 37–38.

**Response to No. 13:** Deny in part. Defendants sent each Plaintiff a letter signed by Defendant Giles and directed to the United States Embassy in Mexico in support of their visa application, stating the essential terms of employment, namely that each would be employed as an "Animal Scientist for a three-year period commencing in October 2014 at an annual salary of at least $25,000." Ex. 4, at 1; Ex. 22, at 47. This letter operates as the employment contract.

**Response to No. 15:** Deny in part. Plaintiffs regularly received direct payment from Funk Dairy, but, as a result of Defendants' fraudulent misrepresentations—that Defendants would help with travel and living expenses—made when offering Plaintiffs employment, Plaintiffs had no choice but to spend portions of their pay on unanticipated expenses. Ex. 21, at 29; Ex. 22, at 24–25; Ex. 24, at 22.

**Response to No. 16:** Deny in part. Plaintiff Neri received in excess of $25,000 in gross compensation during his first year of employment, but Defendants did not pay him the $2,000 bonus or six days of paid vacation. Ex. 14. Additionally, Defendants shorted the following

Plaintiffs/amounts regarding vacation pay: Plaintiff Munoz was shorted $258; Plaintiff Padilla was shorted $105; Plaintiff Ortiz was shorted $240; and Plaintiff Gastelum was shorted $120. Ex. 13; Ex. 16; Ex. 17; Ex. 18.[2]

**Response to No. 17:**  Deny in part. Plaintiffs dispute No. 17 to the extent it is misleading. Deposition Exhibit 21 cited does not reflect the unilateral change Defendants made after Plaintiffs Munoz, Gastelum, and Ortiz moved out of the dairy housing, when Defendants increased Plaintiff Padilla's rent from $100 to $400 per month. Ex. 22, at 48; Ex. 24, at 37.

**Response to No. 18:**  Deny in part. While Plaintiffs may have been at-will employees, the circumstances that Defendants imposed on them made it so that Plaintiffs were not able to end their employment until they had enough money to afford return travel to Mexico. Ex. 19, at 42; Ex. 21, at 35–36, 56; Ex. 24, at 33–34.

**Response to No. 19:**  Deny in part. Plaintiffs dispute No. 19 to the extent Defendants omit the crucial fact that legal counsel on behalf of Defendants prepared each Plaintiff for their TN Visa interview, most notably by instructing them not to state that they would be milking cows at Funk Dairy. Ex. 20, at 43; Ex. 22, at 30.

**Response to No. 21:**  Deny in part. Certain activities listed in No. 21 were not outlined in Deposition Exhibit 20 cited, including performing essential sanitation, fresh cow milking, and *assisting with* administration of medicine and treatment. Ex. 4. Additionally, while each Plaintiff may have performed some of the listed activities, Plaintiffs never acted in a capacity different from general, nonprofessional laborers. Ex. 26, at 56. Defendants primarily assigned Plaintiffs to

---

[2] Exhibits 13–18 are the copies of Plaintiffs' payroll summaries that Defendants disclosed to us. Upon review of Defendants' exhibits filed in support of their *Motion for Summary Judgment*, we noticed the payroll summary versions that Defendants submitted were slightly different than the ones they provided us. However, the numbers are more or less the same.

menial, unskilled activities such as cow milking, moving cows from pen to pen, transporting cows from area to area, feeding cows, and cleaning cow feces, eating areas, and milking equipment. Ex. 19, at 16–17, 23–25, 50; Ex. 20, at 52–56, 80–82; Ex. 21, at 46–49, 52–55, 66; Ex. 22, at 45–46, 50–53; Ex. 24, at 42–43, 53–54, 64, 81. This is true despite Plaintiffs having told Defendants the work did not amount to animal science. Ex. 23, at 56–66.

**Response to No. 23:**  Deny in part. While Plaintiffs lived in Defendant-owned housing, Defendants prohibited them from have visitors, maintained surveillance on their housing, and entered without permission. Ex. 19, at 42; Ex. 23, at 69–72; Ex. 24, at 51–52, 56. Moreover, Plaintiffs did not know the area, most did not speak English, or—as a result of expenses imposed by Defendants—have the means to find another housing option until months later. Ex. 21, at 55–56; Ex. 23, at 47.

**Response to No. 24:**  Deny in part. Defendants controlled Plaintiffs' freedom of association by prohibiting them from receiving visitors at the dairy housing and maintaining surveillance on their housing. Ex. 19, at 42; Ex. 22, at 58; Ex. 23, at 73–74; Ex. 24, at 56, 58.

**Response to No. 25:**  Deny in whole. Rather, Plaintiffs stated during depositions that Defendants censored and monitored their communication with others by prohibiting them from discussing their pay with coworkers under threats of deportation. Ex. 20, at 59; Ex. 21, at 60; Ex. 22, at 58–59; Ex. 24, at 59.

**Response to No. 26:**  Deny in part. Plaintiffs dispute No. 26 to the extent Defendants omits that they discharged three of the Plaintiffs because they would not quietly let Defendants take advantage of them. Ex. 6, at 5; Ex. 8; Ex. 21, at 47–49; Ex. 23, at 56–64; Ex. 24, at 55, 64–65, 70–71. Plaintiffs Munoz and Padilla quit when they could no longer endure the conditions Defendants imposed on them. Ex. 19, at 52; Ex. 22, at 66–67. Finally, Plaintiff Neri, who, as

Defendants knew, suffered from diabetes, quit after his health suffered as a result of Defendants demanding twelve-hour shifts but denying him breaks or a place to store his insulin. Ex. 20, at 34, 60, 66, 70.

**Response to No. 27:** Deny in part. In its investigation, ICE did not determine Defendants had not committed fraud. Rather, it merely used its discretion to decline prosecuting as a criminal matter.

**Response to No. 28:** Deny in whole. There are several facts demonstrating why Defendants Funk, Giles, and Shoesole Farms are liable in this action. For further discussion, *see Plaintiffs' Opposition to Defendants' Motion for Summary Judgment*, filed herewith.

**Response to No. 29:** Deny in part. Plaintiffs dispute No. 29 to the extent that it mischaracterizes Plaintiffs' curriculum vitae. Ex 21, at 66. Plaintiffs admit to performing activities at Funk Dairy related animal science, but they primarily were tasked with nonprofessional work, as stated *supra*.

**Response to No. 30:** Deny in part. Plaintiffs dispute No. 30 to the extent that they are still awaiting discovery requests from Defendants that may compound Plaintiffs' damages. Ex. 27. Moreover, this is a jury trial, thus damages can be proven at trial. For further discussion, *see Plaintiffs' Opposition to Defendants' Motion for Summary Judgment*, filed herewith.

**Response to No. 31:** Deny in part. Plaintiffs' counsel objected to Defendants' inquiries regarding damages to the extent that such inquiries called for a legal conclusion and because at that time discovery was still ongoing. Ex. 20, at 66–67, 72–73.

**Response to No. 32:** Deny in part. During Plaintiff Munoz's deposition, counsel indicated that Plaintiffs may use expert witness testimony to establish damages. Ex. 19, at 53. Since that time, counsel has determined that it is not necessary and that expert testimony will be

– 8 –

used only for the original purposes noted in *Plaintiffs' Expert Witness Disclosures* dated March 26, 2018. *Affidavit of Edgar Ivan Aguilasocho*, at ¶ 3.

## II.  PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE

After considering all facts in a light most favorable to Plaintiffs, there is a disputed issue of fact as to whether:

1. Defendants sought to hire foreign nationals under NAFTA to address labor and retention issues, which goes towards motive and knowledge under Plaintiffs' TVPRA claims, even though Defendants claim they only sought to improve the standard and skill level at Funk Dairy (Ex. 5, at 4, 6; Ex. 26, at 47–51, 56; *but see* Ex. 25, at 17; Ex. 26, at 33–35);

2. In securing NAFTA TN Visas for each Plaintiff, Defendants committed fraud. Defendants never provided Plaintiffs with professional-level work as animal scientists and they never intended to (Ex. 2, at 7 (designating Plaintiff Padilla as a "general laborer"); Ex. 4; Ex. 12 (designating Plaintiffs as "milkers," "calvers," and "outside help"); Ex. 26, at 47–51, 56);

3. Defendants intended to obtain and/or provide the forced labor of Plaintiffs (Ex. 19, at 49–50; Ex. 20, at 80–82; Ex. 23, at 56–66; Ex. 24, at 42–43; Ex. 26, at 56);

4. Defendants threatened Plaintiffs with serious harm sufficient to compel them to continue working for Defendants, including immigration, physical, and financial harm (Ex. 19, at 42–43; Ex. 20, at 59; Ex. 21, at 35–36, 56, 60; Ex. 22, at 31, 59; Ex. 23, at 68–71; Ex. 24, at 33–34, 59–61);

6. Defendants statements to Plaintiffs regarding deportation amounted to unlawful threatened abuse of the law or legal process (Ex. 19, at 42–43; Ex. 20, at 59; Ex. 21, at 56, 60; Ex. 22, at 31, 59; Ex. 23, at 68–69; Ex. 24, at 59–61);

7. Defendants created a scheme to compel Plaintiffs to continue working for them (Ex. 19, at 19–22; Ex. 21, at 56; Ex. 22, at 54–57; Ex. 23, at 70, 73–75; Ex. 24, at 56);

8. Defendants Funk, Giles, and Shoesole Farms, along with Defendant Funk Dairy, are liable in this action (Ex. 11, at 7; Ex. 19, at 50–52; Ex. 20, at 38; Ex. 22, at 71, 74–75; Ex. 24, at 61–65; Ex. 25, at 9, 11, 33–34, 46; Ex. 26, at 36–46, 90–91; Ex. 28–29);

9. Defendants are not credible in light of various inconsistent statements they have made before and during this case (*compare* Ex. 5, *with* Ex. 26, at 33–34; *compare* Ex. 2, *with* Ex. 26, at 53, 56; *compare* Ex. 11, *with* Ex. 19, at 35–36; *compare* Ex. 4, *with* Ex. 26, at 48–50);

10. Defendants' letter in support of each Plaintiffs' NAFTA TN Visa application constitutes a written contract (Ex. 4);

11. Material terms of Plaintiffs' employment included professional-level work as animal scientists, for a three-year period, and at a minimum salary of $25,000 as well as Defendants' promises to provide stable wage raises, airfare to and from Mexico, housing, and childcare were additional terms and conditions material to Plaintiffs' employment (Ex. 4; Ex. 19, at 34–35; Ex. 22, at 23–25, 42; Ex. 23, at 36; Ex. 24, at 31–36);

12. Defendants breached Plaintiffs' contract by failing to provide professional-level work as animal scientists, stable wage raises, or free airfare, housing, and childcare, and discharging Plaintiffs early or otherwise making working conditions unbearable such that Plaintiffs had to quit. Even though Plaintiffs told Defendant Giles that what they were doing was not animal science, Defendants assigned them to menial, unskilled work, such as milking cows and cleaning cow feces (Ex. 19, at 16–17, 23–25, 50; Ex. 20, at 52–56, 80–82; Ex. 21, at 35–36, 46–49, 52–55, 66; Ex. 22, at 45–46, 50–53; Ex. 23, at 56–66; Ex. 24, at 33, 42–43, 53–54, 64, 81);

13. Defendants did not act reasonably in enforcing the contractual provisions of Plaintiffs' employment, for example, by failing to provide all or some of Plaintiffs with work as

– 11 –

animal scientists, a $2,000 bonus, the full amount of one week paid vacation, and travel costs to and from Mexico (*see* exhibits cited, *supra*);

14. Defendants defrauded Plaintiffs by making false promises regarding material terms and conditions of employment and are, therefore, liable for Plaintiffs' unpaid wages and benefits as well as out-of-pocket expenses for housing, travel, and childcare; and

15. Annual wages of $25,000 may not constitute fair compensation for Plaintiffs' labor.

Dated: October 17, 2018                              Respectfully submitted,

                                                     MARTINEZ AGUILASOCHO & LYNCH, APLC


                                                     /s/ Edgar Ivan Aguilasocho
                                                     Edgar Iván Aguilasocho, Esq.
                                                     Attorney for Plaintiffs